## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| M. MAROPAKIS CARPENTRY, INC.,     ) | |
|                                     ) | |
|         Plaintiff,                     ) | |
|                                     ) | No. 03-2825C |
| v.                                          ) | |
|                                     ) | (Judge Baskir) |
| THE UNITED STATES,            ) | |
|                                     ) | |
|         Defendant.                  ) | |

## **FIRST AMENDED COMPLAINT**

### Introduction

1.       Plaintiff is M. Maropakis Carpentry, Inc. ("Maropakis"), a New York Corporation which maintains its office at 555 63rd Street, Brooklyn, New York 11220.

2.       Defendant is the United States of America acting through the Department of the Navy, contracting office at the Naval Inventory Control Point ("NAVICP"), 5450 Carlisle Pike, Mechanicsburg, Pennsylvania 17055 ("the Navy").

3.       Maropakis and the Navy are parties to Contract Number N-662472-97-C-4166 ("the Contract") for certain demolition and replacement work at Building Number 110 at the NAVICP ("BLDG 110"). BLDG 110 was a warehouse used by the Navy.

4.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1941 because this claim involves a breach of contract claim brought by Maropakis against the Navy.

5.       This lawsuit is timely filed pursuant to 41 U.S.C. § 609(a) following a final decision of the contracting officer.

### Discussion

6.       The contract documents were prepared by, *inter alia*, Gale and Associates, Inc. ("Gale"), an architectural and engineering firm with offices located in Baltimore, Maryland.

562704.1

7. On or about April 6, 1999, Maropakis and the Navy entered into the Contract. Because of its bulk and size a full copy of the contract is not attached. However, the Navy does have a full copy.

8. The contract work included, *inter alia*, the following activities:

   a. Removal and replacement of certain monitor windows (located on monitors situated on top of the roof);

   b. Removal and replacement of the roofing materials;

   c. Removal and replacement of asbestos containing transite panels; and

   d. other related work as set forth in the contract.

9. The contract further provided that the contract work had to be completed within 270 calendar days.

10. This claim involves Maropakis' request for a compensable time extension and extra costs as a result of errors and omissions in the contract documents as well as actions taken by the Navy and its consultants during the period of contract performance.

### Maropakis Window Claim

*The Specifications Required a Window Which Does Not Exist*

11. The contract documents included specification section 08520 aluminum windows ("Section 08520") which provided the technical requirements for the replacement monitor windows.

12. Specification 08520 specifically incorporated certain industry standards as part of the Contract. These included, but were not limited to, the following:

  a. The ANSI/AAMA 101 (1993) Aluminum And Poly (Bi-Chloride) PVC Prime Windows And Class Doors ("AAMA 101"); and

  b. The AAMA 1503.1 (1988) Thermal Transmitants And Condensations Resistance Of Windows, Doors And Glazed Wall Sections ("AAMA 1503.1").

 13. Section 08520 specifically required the windows to be manufactured and certified in accordance with the requirements of the AAMA 101.

 14. Paragraph 2.1.8 of Section 08520 required Maropakis to supply "Type P HC-40 (optional performance class)" monitor windows for the project.

 15. Under the labeling scheme set forth in the AAMA, the designations "P HC-40 (Optional Performance Class")" have specific meanings, as follows:

  a. The term "P" means that the windows were "projected."

  b. The term "HC" means "Heavy Commercial." Thus Maropakis was required to provide projected windows that were heavy commercial.

  c. The term "40" is the positive design pressure for the windows.

  d. The terms "optional performance class" means that the window has been tested to conform with higher uniform load structural and water resistance criteria than the normal performance levels. The AAMA specifically identifies the higher performance criteria which is required in order to obtain the "optional performance class" rating.

 16. P HC-40 windows are common.

17.     The AAMA 101 does not provide for P HC-40 "(optional performance class)" windows.

18.     The Navy and the contract documents did not disclose to Maropakis that "P HC-40 (optional performance class)" windows do not exist under the AAMA 101.  The Navy's failure to disclose this information is a material breach of contract which resulted in additional costs and delay to Maropakis.

*The Specifications Violated the AAMA With Respect to Water Resistance Test Pressure*

19.     Under the AAMA 101 labeling scheme, windows designated as P HC-40 are to meet certain requirements with respect to water resistance test pressure.

20.     Under the AAMA 101 provisions, water resistance test pressure is designated as 15% of the design pressure.  Accordingly, an HC-40 window would have a water resistance test pressure of 6 psf (i.e. 40 psf x 15% = 6 psf).

21.     Notwithstanding the designation of HC-40, Specification 08520 required Maropakis to supply windows with a water resistance test pressure of 20 psf.

22.     The AAMA 101 specifically provides that the maximum water resistance test pressure for windows is 12 psf.  Accordingly, Specification 08520 exceeded the AAMA's maximum water resistance test pressure <u>for any window</u> by 8 psf.

23.     The Navy's requirement that Maropakis supply windows which conflicted with the AAMA's provisions, while simultaneously requiring Maropakis to provide certifications that the windows met AAMA, is a material breach of the contract which interfered in Maropakis's orderly progression of the work and caused it to incur additional costs and delay.

24. As a result of the Navy's defective specifications, Maropakis was required to provide custom manufactured windows for the project which exceeded the maximum water resistance test pressure for any windows as set forth in the AAMA 101. This further delayed and impacted Maropakis's work on the project and caused it to incur additional costs.

25. Upon information and belief, the Navy was aware of this deficiency in the specifications, but simply chose not to disclose it to Maropakis because it would support Maropakis claim that the window specification delayed its work.

### The Specifications Violated the AAMA With Respect to Air Infiltration Pressure.

26. Specification 08520 also identified the criteria for air infiltration.

27. For a P HC-40 window, the permissible air infiltration is designated by the AAMA 101 as 0.37 psf when tested at 6.24 psf.

28. Notwithstanding this requirement, the Navy's contract documents required an air infiltration not exceed 0.1 psf when tested at 6.24 psf. This requirement is inconsistent with the designation of P HC-40 window.

29. The Navy's designation of windows as P HC-40 and simultaneously requiring windows meeting a greater air infiltration pressure was a material breach of the contract which severely impacted and delayed Maropakis's work and caused further costs on the project.

30. Maropakis is entitled to a compensable extension of time due to the Navy's failure to disclose the deficiency in its specifications.

31. The Navy has refused to pay Maropakis for the impact caused by this delay and breach of contract.

### Delay Due To Discovery of Lead Paint

32. Maropakis's performance of work was also materially and improperly impacted and delayed due to the discovery of lead paint on the existing windows.

33. The contract documents did not inform Maropakis that lead paint requiring removal and disposal in accordance with RCRA standards would be encountered on the project.

34. After the lead paint was discovered on the project, the Navy failed to address it in a timely basis, which caused Maropakis to be delayed from March 7, 2000, up to and including June 21, 2000.

35. Maropakis is entitled to a compensable time extension due to the delays caused by the Navy in timely addressing the removal and disposal of the lead paint found on the windows.

36. The Navy has refused to compensate Maropakis for the impact caused by this delay and its breach of contract.

### Requirement to use Asphalt Adhesive Materials

37. Asphalt is frequently used in the roofing industry as an adhesive for new roofing work.

38. The contract documents called for Maropakis to provide non-asphaltic adhesive materials for the new roof.

39. Maropakis's submittal for the roofing work identified the use of asphalt materials.

40. Gale reviewed Maropakis's roofing submittal and approved the use of asphalt as an adhesive.

41.     Based upon this approval, Maropakis ordered and had delivered asphalt materials for the project.

42.     Navy personnel saw the asphalt materials and did not timely object to its use.

43.     When Maropakis was ready to being placing the new roofing on the project, the Navy rejected the use of asphalt and required Maropakis to supply non-asphaltic materials.

44.     The Navy's untimely rejection of the asphalt materials was a material breach of the contract, and caused Maropakis to experience delays, impact and extra costs.

### **Refusal to allow Maropakis to begin roof removal and replacement work.**

45.     The contract documents provided that Maropakis was required to complete removal and replacement of the monitor windows before removal and replacement of the roof. This was because the Navy did not want Maropakis' workmen walking onto the newly installed roof.

46.     Maropakis requested authorization to remove and replace the roofing materials which were <u>on top of</u> the monitors before the windows were ready to be installed. This area would not have been walked upon by Maropakis's workmen.

47.     The Navy unreasonably and arbitrarily refused to allow Maropakis to perform this work. This was a material breach of the contract which impacted and delayed Maropakis's work and resulted in additional costs.

### **Delays due to Improper review of submittals.**

48.     Maropakis was also delayed by the Navy's and/or its professionals' improper administration and review of submittals.

49. This improper administration and review of submittals delayed and impacted Maropakis's work and caused it to incur additional costs.

## **Remission of Liquidated Damages.**

50. On June 28, 2002, the Navy notified Maropakis that it was assessing liquidated damages in the amount of $650 per day for 467 days totaling $303,550.00.

51. Upon information and belief, the Navy did not incur additional costs justifying the imposition of liquidated damages.

52. Maropakis claims that the assessment of liquidated damages was improper and seeks its remission in full.

## **COUNT I**

53. Maropakis incorporates all of the above paragraphs as if fully set forth here at length.

54. The Navy's actions and omissions as set forth above constitute material breaches of contract.

55. The Navy's actions in assessing liquidated damages were also a material breach of contract.

56. Maropakis is entitled to additional costs and a compensable extension of time.

WHEREFORE, Plaintiff, M. Maropakis Carpentry, Inc. demands judgment from the United States as follows:

(a) Compensatory damages in the amount of $244,036.00 for the contract balance due and presently owing to Maropakis, and other damages incurred by Maropakis throughout the project;

(b) Rescission of Liquidated Damages as improper because the delays were beyond the reasonable control of Maropakis and without its fault or negligence;

(c) To the extent this Court finds in favor of Maropakis, Maropakis is entitled to interest pursuant to 41 U.S.C. § 611 from on or about August 21, 2001, the date the Contracting Officer received Maropakis's claim under 41 U.S.C. § 605(a) at a rate established by the Secretary of the Treasury pursuant to Public Law 92-41;

(d) All attorneys' fees and costs incurred by Maropakis in the preparation of this claim and in the prosecution of this action; and

(e) All other relief as this Court deems just and proper.

Respectfully submitted,

RHOADS & SINON LLP

By:  /s David W. Francis  
David W. Francis  
Kelly H. Decker  
One South Market Square  
P. O. Box 1146  
Harrisburg, PA 17108-1146  
(717) 233-5731  

Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

 I hereby certify that on this September 15, 2005 a true and correct copy of the foregoing First Amended Complaint was filed electronically.  I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

>James D. Colt, Esq.
>United States Department of Justice
>Commercial Litigation Branch, Civil Division
>Classification Unit
>1100 L Street, N.W., 8th Floor
>Washington, DC  20530

>>/s David W. Francis
>>David W. Francis